*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MC, Minor.

UNPUBLISHED
August 17, 2023

No. 364989
Macomb Probate Court
LC No. 2022-242386-GM

Before: O'BRIEN, P.J., and CAVANAGH and MARKEY, JJ.

PER CURIAM.

Appellant, the guardian of the minor child, MC, appeals as of right the probate court's order denying appellant's petition for special findings of fact to apply for Special Immigrant Juvenile (SIJ) status for MC under 8 USC 1101(a)(27)(J) with the United States Citizenship and Immigration Services (USCIS). On appeal, appellant argues that the probate court erred by refusing to find that MC was abandoned or neglected by her parents. We vacate the probate court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

MC is appellant's younger sister. MC and her parents are Albanian citizens. In July 2022, MC was placed in appellant's custody after MC came to the United States as an unaccompanied minor refugee and was admitted to a Texas immigration facility. Appellant commenced this case by petitioning for appointment as MC's guardian.

While appellant's request for guardianship was pending, he also petitioned the court to make predicate factual findings for MC to apply for SIJ status. This included asking the court to find that (1) MC had "been neglected and abandoned" by her parents "[b]ased upon [their] refusal . . . to care for, maintain, or provide for [MC's] essentials, including food, clothing, shelter, education, emotional support, and other basic needs," and (2) "that it would not be in [MC's] best interest to be reunified with her parents." Appellant supported these allegations with his own affidavit.

After appellant's SIJ-related petition was filed, the court appointed appellant as MC's guardian. Later, on November 2, 2022, the probate court held a hearing on appellant's SIJ-related petition. At that hearing, the probate court expressed concern because, while MC's parents had waived service for appellant's petition to be appointed MC's guardian, they had not waived service

-1-

with respect to appellant's SIJ-related petition. The court also noted that appellant needed to serve the Albanian Consulate pursuant to MCR 5.125. Due to these "multiple deficiencies," the court allowed appellant to proceed, but made clear that those deficiencies needed to be remedied before the court issued a decision. Appellant's counsel then addressed the circumstances that led to appellant's SIJ-related petition. Counsel began by explaining that MC initially lived in Albania with her parents but, because of the situation described in appellant's petition, supporting brief, and affidavit, MC's father took her to live with one of her other brothers in Italy. According to counsel, when that brother was no longer able to care for MC, "he made arrangements for the minor child to come to the U.S. to stay with" appellant. Counsel said that, since that time, appellant has been caring for MC—including enrolling her in school—with no assistance from MC's parents. After counsel concluded, the trial court asked if there would be any testimony, and counsel asked the court if it "need[ed] to hear more testimony," and, if not, appellant would merely rely on the affidavit attached to his petition. The court responded, "That's fine," and scheduled a second hearing to allow appellant time to remedy the issues related to service.

The hearing resumed two weeks later on November 16, 2022. At the start of the continued hearing, the probate court noted that MC's parents had waived service for appellant's SIJ-related petition, but the court did not have proof of service or a waiver from "the Consulate as discussed . . . at the prior hearing, which is required under [MCR] 5.125." Despite this deficiency, the probate court addressed the substance of appellant's petition. The court denied the petition, reasoning as follows:

> [T]he request that's made before the Court is the request of abandonment by the parents, and the Court received the pleading and the brief on the matter, but no testimony was given to support that claim or allegation . . . . But the Court does have waivers and consents signed by the parents just as recently as this past week, indicating that the parents support of [sic] this request, which would lend the Court to believe that there has not been abandonment because there is still contact with the Court, or with the parents, and the parents are attempting to secure the placement of the child, which is the evidence the Court has which does not support the claim of abandonment in this regard. And so because the Court does not find abandonment[,] it's not necessary to move onto the second request that's before the Court regarding the best interest[s], as that, as both [findings] are required [and] the Court doesn't need to make a ruling on that.
>
> So at this time I am not finding that there was abandonment beyond, again we still, the petition further fails for improper service [under MCR 5.125]. I'm going to sign an order that reflects the same and that will conclude this hearing.

Appellant's counsel then said that, if the court needed more evidence, appellant was present and could testify to establish "abandonment under the State law," but the probate court declined the invitation for additional testimony, explaining that it already made its ruling.

Appellant moved for reconsideration, arguing that the probate court palpably erred because (1) MCR 5.125 is inapplicable to this case, and (2) the parents clearly abandoned or neglected MC given the instant facts. The court denied this motion, reiterating that appellant presented no

witnesses or testimony "to support the unverified statements contained in the Petition." This appeal followed.

## II. STANDARD OR REVIEW

As this Court recently explained in *In re Velasquez*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 360057); slip op at 3:

> We review for an abuse of discretion a probate court's dispositional rulings and review for clear error the factual findings underlying its decision. A court abuses its discretion if it chooses an outcome outside the range of reasonable and principled outcomes. The probate court necessarily abuses its discretion when it makes an error of law. A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding. This Court defers to the probate court on matters of credibility and gives broad deference to findings of fact made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily ascertainable to the reviewing court. [Quotation marks and citations omitted.]

## III. ANALYSIS

Appellant argues that the probate court erred by refusing to find that MC was abandoned or neglected by her parents. We agree.

### A. SIJ STATUS OVERVIEW

The Immigration and Nationality Act of 1990 "established SIJ status as a path for resident immigrant children to achieve permanent residency in the United States." *In re LFOC*, 319 Mich App 476, 481; 901 NW2d 906 (2017). "In short, 8 USC 1101(a)(27)(J) and 8 CFR 204.11 afford undocumented children, under the jurisdiction of a juvenile court, the ability to petition for special immigrant juvenile status in order to obtain lawful permanent residence in the United States." *Id.* at 484 (quotation marks and citation omitted).

> There is a two-step process for obtaining SIJ status, entailing a unique hybrid procedure that directs the collaboration of state and federal systems. First, the state court makes predicate factual findings concerning the juvenile's SIJ status. The state court must find that an individual who seeks SIJ status is under the age of 21, unmarried, and (1) dependent on the juvenile court, (2) *cannot viably be reunified with one or both of their parents due to neglect, abandonment, or a similar basis found under state law*, and (3) the juvenile's best interests would not be served by returning to their country of origin. 8 USC 1101(a)(27)(J). The findings made by the state court only relate to matters of child welfare, a subject traditionally left to the jurisdiction of the states, and are made according to state law. . . . [T]he state court is not to engage in an immigration analysis or decision. Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government . . . . After

-3-

the state court makes the predicate findings, the juvenile applies to the USCIS for SIJ status. The USCIS engages in a much broader inquiry than state courts, and makes the ultimate decision as to whether or not the juvenile's application for SIJ status should be granted. [*In re Velasquez*, ___ Mich App at ___; slip op at 3-4 (emphasis added; quotation marks and citations omitted; second omission in original).]

Predicate factual findings for SIJ status must be established by a preponderance of the evidence. *Id*. at ___; slip op at 6.

## B. APPLICABLE MICHIGAN LAW

Under the Child Abuse and Neglect Prevention Act, MCL 722.601 *et seq*., MCL 722.602(d)[1] provides:

> "Neglect" means harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care. [See also *In re Velasquez*, ___ Mich App at ___; slip op at 8 (relying on MCL 722.602(d) in SIJ proceeding).]

Under MCL 722.622(k) of Michigan's Child Protection Law, MCL 722.621 *et seq*., "child neglect" is defined as:

> harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:
>
> (i) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or by the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.
>
> (ii) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk. [See also *In re Velasquez*, ___ Mich App at ___; slip op at 8 (relying on MCL 722.622(k) in SIJ proceeding).]

---

[1] Michigan's Probate Code of 1939, MCL 712A.2(b)(1)(B), incorporates the definition of neglect as used in MCL 722.602.

Under Michigan's Uniform Child-Custody Jurisdiction and Enforcement Act, MCL 722.1101 *et seq.*, MCL 722.1102(a) defines the term "abandoned" as used in this Act as "left without provision for reasonable and necessary care or supervision."[2]

## C. APPLICATION

At the outset, we note that, when reviewing the probate court's reasons for denying appellant's petition, it is apparent that the court only addressed whether MC had been abandoned, even though appellant's petition claimed that MC was both abandoned *and* neglected. It is also apparent, however, that the probate court made its ruling at least in part on the basis that it "received no testimony or support for the claim of abandonment," and the evidence that appellant relied upon in support of his assertion of abandonment was the same evidence he relied upon in support of his assertion that MC was neglected. It therefore seems that the probate court's reasons for denying appellant's assertion of abandonment would at least partially apply to appellant's assertion that MC was neglected—appellant failed to properly support the assertion. We therefore begin by addressing the probate court's reasoning that appellant failed to present evidence supporting his claim.

While the probate court was correct that appellant provided no testimony to support SIJ findings in this case, appellant's petition included a notarized affidavit in which appellant provided sworn statements about the factual basis for his request that the trial court make findings for SIJ status. In that affidavit, appellant averred that MC's family in Albania faced threats of violence and danger from political and social unrest in the community, with the family home burning down and MC's parents ultimately abandoning her. According to appellant, the parents feared for MC's safety and could not care for her. Appellant averred that MC's parents failed to provide her necessities like housing, clothing, monetary support, and school supplies when she was in Albania, preventing MC from attending school there. Appellant averred further that MC's parents provided no financial, educational, physical, or emotional support to him or MC since the child came to the United States, and that he was currently addressing MC's needs.

On the basis of this affidavit, there was evidence that could support a finding that MC was either abandoned or neglected by her parents under Michigan law. The probate court, unfortunately, failed to consider this evidence, instead concluding that there was no support for appellant's petition because he failed to submit testimony. We accordingly vacate the probate court's order and remand for the probate court to reconsider appellant's petition and decide whether the affidavit sufficiently supports a finding that MC was abandoned or neglected under state law. If the probate court believes that the affidavit is insufficient to support such a finding absent additional testimony, or if the court otherwise believes that additional testimony is

---

[2] Appellant's brief cites a practically similar provision from the Michigan Penal Code, MCL 750.1 *et seq.*, defining felony desertion and abandonment as "[a] person who deserts and abandons his or her . . . children under 17 years of age, without providing necessary and proper shelter, food, care, and clothing for them . . . ." MCL 750.161(1).

necessary to properly render a decision in this case, the court shall order that such testimony be taken.[3]

Briefly addressing the probate court's reason for declining to find that MC's parents abandoned her, the probate court explained that, because MC's parents continued to have contact with her and appellant as evidenced by their waivers and consents to the SIJ petition, the court could not conclude that MC's parents abandoned her. We question whether this minimal contact is sufficient to conclude that MC's parents did not abandon her under Michigan law, but even if it was, it would not foreclose a finding of neglect. In *In re Velasquez*, this Court held that the fact that the minor child's mother was involved with the minor child's "transition to this country" did not nullify other facts showing neglect. *In re Velasquez*, ___ Mich App at ___; slip op at 10.

Lastly, while not addressed by appellant, the probate court also concluded that the SIJ-related petition was deficient for improper service, particularly because appellant never effectuated any consular service as required by MCR 5.125. In his motion for reconsideration, appellant argued that this requirement was not applicable to this case, and when the trial court denied appellant's motion, it never addressed this argument. Therefore, it seems whether service to the foreign consular was necessary under MCR 5.125 is an open question that must be addressed on remand. Notably, the probate never reasoned that the lack of service under this MCR 5.125 was an independent basis to deny appellant's petition. This is reinforced by the probate court's denial of appellant's motion for reconsideration in which the probate court focused exclusively on the lack of evidence supporting the "circumstances alleged in the Petition," not on the lack of service under MCR 5.125. On remand, if the probate court believes that the lack of service on the foreign consulate is an independent ground to deny appellant's petition, it is free to do so and place its reasoning on the record.[4]

Vacated and remanded. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Jane E. Markey

---

[3] In light of this holding, we decline appellant's request to independently rule on the best-interests issue, and instead leave that matter for the probate court to address, if necessary.

[4] We note, however, that appellant is free (or otherwise shall be given the opportunity) to preemptively resolve this issue—and assuage any of the probate court's lingering concerns—by simply serving the consulate.